NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0268n.06
Filed: May 16, 2008

No. 06-4218

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| VARIAN MALICK PARKS, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| Defendant -Appellee. | ) | DISTRICT OF OHIO |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE:    KEITH, CLAY, and GILMAN, Circuit Judges.


DAMON J. KEITH, Circuit Judge. Defendant Varian Malick Parks appeals his conviction

for aiding and abetting a bank robbery. He argues: (1) that the atmosphere created at the joint trial

by the co-defendant's self representation denied him a fair trial; (2) that the district court improperly

removed a juror for cause during voir dire over his objection; (3) that the district court erred by

allowing to be shown a video of Defendant being stopped for a speeding violation while driving the

vehicle subsequently used in the bank robbery; (4) that the district court incorrectly denied him the

right to confront a witness whose prior testimony was read into the record at trial; (5) that the district

court wrongly held that there was sufficient evidence to sustain a conviction for aiding and abetting

a bank robbery; (6) that the district court failed to dismiss the indictment after a grand jury witness

refused to testify at trial; and (7) that he was denied his Fifth Amendment right to notice by a defectively unclear indictment. For the reasons outlined below, we AFFIRM the district court's decision.

## I. FACTUAL BACKGROUND

On August 3, 2005, Defendant-Appellant Varian Malick Parks ("Defendant") was indicted for robbing Unizan Bank in Canton, Ohio. The indictment charged that Defendant took from "tellers of the Unizan Bank, the approximate sum of $43,505.00," in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. Section 2 of Title 18 is the aiding and abetting provision. The Government's response to Defendant's later severance motion was more specific, alleging that Defendant was "charged as being the getaway driver in Count 1." (J.A. 34). Both Defendant and Marcus Lige were also indicted for conveying false information and hoaxes and making a bomb threat using a cellular telephone. Defendant was convicted of aiding and abetting the robbery as the driver of the getaway car and acquitted of the other two charges. In a separate trial, Lige was convicted of the robbery, and in the same trial as Defendant, was convicted of (1) conveying false information and hoaxes and (2) making a bomb threat.

Defendant's grounds for appeal stem from the facts surrounding the bank robbery and the subsequent trial. On August 3, 2005, at 10:33 a.m., the Canton Police Department ("CPD") received a call warning of a bomb in the North Wing of the NFL Hall of Fame. Approximately 23 minutes later, CPD received a call from Unizan Bank customer Philip Barr, who described a bank robbery that had just taken place at Unizan Bank on Denison Avenue. (J.A. 414). Barr stated that the robber entered a "maroonish" Lincoln Continental or Chrysler New Yorker while Barr followed on foot. *Id*.

A number of bank employees and associates later identified the bank robber as Marcus Lige. (J.A. 427, 514, 563, 681).

Witness Nola Garret identified the getaway car as the same car in a picture taken in 2005 in the driveway of Regina Skinner, one of Defendant's former girlfriends. (J.A. 731). The car was later purchased by a woman named Lakisha Ruffin on March 16, 2005 from Pro Car Auto Group. (J.A. 765). Defendant was videotaped by a police officer driving the car during a traffic stop the day after it was purchased by Ms. Ruffin. (J.A. 770).

The Government alleges that between 10:04 a.m. and 11:34 a.m. on the morning of the robbery, Lige used cellular phone (330) 412-3880 during the course of the bank robbery and subsequent escape. (J.A. 34). This phone was used to place the bomb threat, and at the time of the robbery, was used to call Defendant, whose cellular phone number was (330) 409-3912. *Id.* At 10:57 a.m., moments after Lige was picked up, Defendant used cellular phone (330) 409-3912 to call Lakisha Ruffin, owner of the alleged getaway car. *Id.* The same day, at 11:02 a.m., Ruffin reported her vehicle stolen. Throughout the day of the robbery, Ruffin ((330) 685-3682) called Defendant at (330) 409-3912. Ruffin testified at a grand jury hearing that Defendant told her that his friend had robbed a bank, that he was driving Ruffin's car, and that many people had witnessed the getaway. (J.A. 1309). The next morning, the alleged getaway car was found destroyed by fire in southern Canton. (J.A. 34).

## II. DISCUSSION

### A. Whether the joint trial denied Defendant a fair trial

This Court reviews the district court's denial of a severance motion for abuse of discretion. *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (citing *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993)).

Defendant contends that he was denied a fair trial due to the district court's decision to try him with Marcus Lige. Lige had been tried separately for and convicted of the bank robbery. He was indicted and tried together with Defendant for conveying false information and hoaxes and for making a bomb threat.

Defendant argues that Lige's presence as a co-defendant denied him a fair trial because (1) Lige represented himself; (2) Lige called as a witness Agent McMurtry, who testified on redirect examination that Lige had accused McMurtry of being a terrorist; and (3) Lige called a number of other witnesses, police officers, and agents who created a prejudicial environment by testifying about the robbery, arrest, and line-up.

Federal Rule of Criminal Procedure 8(b) provides that an "indictment may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8. The Supreme Court has held that when defendants are indicted together, joint trials are encouraged to promote efficiency and avoid the potential for inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). In cases where charges against multiple defendants are proven by using evidence from the same series of acts, this Court strongly favors joint trials. *United States v. Blakeney*, 942 F.2d 1001, 1011 (6th Cir. 1991).

4

A co-defendant is not entitled to severance merely because severance might increase the possibility of acquittal. *Zafiro*, 506 U.S. at 540. Rule 14 provides "relief from prejudicial joinder" if "the joinder of offenses or defenses . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). This Court has held that "severance is required 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (quoting *Zafiro*, 506 U.S. at 539).

The Government contends that in order to avoid such a compromise of Lige's trial rights, Lige was tried separately on the bank robbery. Lakisha Ruffin testified to the grand jury that Defendant admitted his role in the robbery. If Defendant and Lige would not have been tried together on the robbery charge and his admission to Ruffin was offered, Lige would not be able to cross-examine Defendant.

At the joint trial, the jury was not told that Lige had been tried for the bank robbery. The Government intended to call Ruffin to have her testify only as to Defendant's role as the getaway driver. Ruffin, who testified to the grand jury, refused to testify at trial. Ruffin's grand jury testimony was then read into the record. [1] All of the remaining evidence the Government intended to introduce would have been be identical to the evidence presented had there been two separate trials. The Government would still have had to establish that Lige was the robber and that he possessed the cell phone that was used to make the bomb threat and the call to the getaway driver.

---

[1] The potential Confrontation Clause problem presented by the admission of this evidence will be analyzed in Section D.

The record below does not demonstrate that Defendant was prejudiced by the joint trial. First, there is no evidence that Lige's decision to represent himself undermined Defendant's trial rights. Although Defendant argues that during his *pro se* representation, Lige made prejudicial references to the line-up proceedings, the evacuation of the NFL Hall of Fame, and the bomb threat, the jury was able to separate the evidence against Lige and Defendant. The jury acquitted Defendant of the hoaxes and bomb threat charges and convicted Lige on the same counts.

Second, although Lige called a number of witnesses, including Agent McMurtry, to testify about the bomb threat, robbery, arrest, and line-up, none of the testimony was sufficiently antagonistic to Defendant to prejudice the trial. This Court has held that mutually antagonistic defenses alone do not require severance. *United States v. Breinig*, 70 F.3d 850, 852 (6th Cir. 1995). In *Breinig*, the Court ruled in favor of severance because it found that the highly antagonistic defenses presented by a husband and wife in a tax case were exceptionally prejudicial. The co-defendant wife in *Breinig* created exceptional prejudice by arguing that the defendant husband was an adulterous, abusing, and manipulating spouse.

Here, Lige did not offer any testimony in his own defense that was highly antagonistic toward Defendant. Again, Defendant was actually acquitted of the charges Lige faced and was convicted for aiding and abetting after the jury heard testimony tying him to the getaway car.

Finally, there is no evidence in the record demonstrating that Defendant was prejudiced for any of the reasons mentioned in *Zafiro*, such as the use of substantial evidence admissible against only one defendant, a great disparity between the defendants' relative culpability, or the unavailability of exculpatory evidence in a joint trial. *Zafiro*, 506 U.S. at 539. The trial court's final instruction

6

directed the jury to consider separately the evidence against the defendants. (J.A. 1521) ("Each defendant is entitled to have his case determined from the evidence as to his or her own acts [or] statements . . . . The fact that you return a verdict of guilty or not guilty as to one defendant should not in any way affect your verdict regarding each other defendant.").

For the above reasons, the trial court did not abuse its discretion by denying Defendant's severance motion.

**B. Whether the trial court improperly removed a juror for cause during voir dire over Defendant's objection.**

This Court reviews the improper removal of jurors for abuse of discretion. *United States v. Giacalone*, 588 F.2d 1158, 1164 (6th Cir. 1978). The Supreme Court has held that defendants are constitutionally entitled to "a panel of impartial, 'indifferent' jurors," *Irwin v. Dowd*, 366 U.S. 717, 722 (1961), and this Court has found that the question of whether a seated jury is fair and impartial is a factual one, requiring the assessment of credibility. *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003). Findings of impartiality can only be overturned where manifest error is present. *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) (citing *Patton v. Yount*, 467 U.S. 1025, 1031 (1984)).

In this case, Defendant objected to the removal of Juror Dugan. (J.A. 216). Both the Government and Defendant agreed that Dugan had answered a number of questions in the written questionnaire in a manner that required verbal inquiry. When Dugan was questioned, Defendant concedes that Dugan described his negative experiences with law enforcement and that he did not feel he could be fair to the prosecution. (J.A. 219). Dugan also expressed that he was racist and that his

racism could prevent him from being impartial. (J.A. 221). The Government challenged for cause, and based on his statements, the court dismissed Dugan.

Defendant objected to Dugan's removal, arguing that Dugan may have been impartial because Dugan stated that he *wasn't sure* he would be biased. Defendant now asserts that "it was wrong for the trial court to excuse this juror for cause" over his objection. (Def. Br. 19).

Defendant does not contend, nor is there anything in the record to show, that the jury that was seated was biased. Defendant concedes that Dugan was racist and questioned his own ability to be fair. In light of Dugan's statements and Defendant's failure to demonstrate that the jury was not impartial, the district court did not abuse its discretion or violate Defendant's right to a fair trial by removing Dugan from the jury.

## C. Whether the video of Defendant's previous traffic stop was unduly prejudicial

This Court reviews the admission of evidence that may be prejudicial under Federal Rule of Evidence 403 for abuse of discretion. *United States v. Brown*, 367 F.3d 549, 554 (6th Cir. 2004) (citing *United States v. Bonds*, 12 F.3d 540, 544 (6th Cir. 1993)). We "take[] maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *United States v. Foster*, 376 F.3d 577, 592 (6th Cir. 2004).

The Government presented video of Defendant being stopped for speeding to establish that he was in possession of the getaway car. Lakisha Ruffin, an acquaintance of Defendant, purchased the car on March 16, 2005 and registered the vehicle in her name. The Government expected to call Ruffin to the stand in order to demonstrate that Defendant was in possession of the car even after she

purchased it. When testifying in front of the grand jury, Ruffin had recanted her previous claim that her car had been stolen and stated, instead, that Parks was in possession of the vehicle on the day of the bank robbery. (J.A. 1304). At trial, however, Ruffin refused to testify despite being immunized from prosecution.

The Government contends that the video of Defendant in the car was probative because it was necessary to demonstrate that Defendant, not Ruffin, was in possession of the car. The video showed only the end of the traffic stop.

Defendant argues that the video was unnecessary because the Government had used other witnesses to identify Defendant in pictures taken of him next to the car a month after the traffic stop. Defendant further contends that the video was unduly prejudicial because it shows that the defendant had prior run-ins with law enforcement.

Although the introduction of the video may have had some prejudicial effect because it involved a traffic stop, it was also probative because it was used for the purpose of identifying Defendant as a driver of the vehicle. Despite other photographic evidence of him standing next to the car, Defendant argued that there was insufficient evidence tying him to the vehicle. The video provided evidence to refute Defendant's claim that he was not in possession of the vehicle used in the bank robbery. This Court must take the "maximal view of the probative effect" of the video and "a minimal view of its unfairly prejudicial effect." *Foster*, 376 F.3d at 592. Because only a short clip of the video was admitted to show that Defendant was in possession and the actual driver of the car that was used in the robbery, it does not appear that the prejudicial effect outweighed the probative value.

Even if the video was more prejudicial than probative, however, the Defendant has not explained how it affected his "substantial rights," as required for reversal of the conviction. *See United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000). The Government did not make any statements that would suggest that the video clip was representative of Defendant's prior history with law enforcement or that Defendant had a criminal history. The video was used for the purpose of addressing Defendant's claim that he was not in possession of the vehicle that was registered to Ruffin. The court specifically instructed the jury not to discuss other possible law enforcement violations stemming from the stop, as they were irrelevant to the case. (J.A. 1607). Finally, as Defendant has conceded, the Government presented other evidence tying him to the vehicle used in the bank robbery.

Because the trial court fairly weighed the probative value of the evidence against its potentially prejudicial impact, it did not abuse its broad discretion in deciding to admit the video evidence.

### D. Whether the admission of a witness's prior testimony violated the Confrontation Clause

This Court reviews *de novo* an alleged violation of the Confrontation Clause. *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004). Confrontation Clause violations are subject to harmless error review, under which a violation is found harmless only if it is harmless beyond a reasonable doubt. *United States v. Powers*, 500 F.3d 500, 510 (6th Cir. 2007) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Harmless error analysis in the Confrontation Clause context depends on factors such as "the importance of the witnesses' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or

10

contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Arsdall*, 475 U.S. at 684. *See also Schneble v. Florida*, 405 U.S. 427, 432 (1972)*; Harrington v. California*, 395 U.S. 250, 254 (1969).

Defendant argues that the admission of Ms. Ruffin's testimony, which was read into the record after she refused to testify at trial, violated his right to confront Ms. Ruffin under the Confrontation Clause of the Sixth Amendment. The Government used the testimony to show that at approximately 10:57 a.m. on August 3, 2005, immediately after the robbery and five minutes before Ms. Ruffin reported her car stolen, Ms. Ruffin received a call from Defendant. The Government sought to use this evidence, in conjunction with other circumstantial evidence tying Defendant to Lige, to demonstrate that Parks was in fact the getaway driver in the robbery.

In refusing to testify at trial, Ruffin claimed that she had married Defendant in a religious ceremony during the previous year in Canton. (J.A. 967-68). The trial court rejected Defendant's claim, noting that she had not cited her marriage to Defendant in any prior proceeding or interaction with law enforcement. The trial court also found that any marriage to Defendant was void because records showed that he was already married to another woman.

The trial court admitted Ruffin's testimony under Federal Rule of Evidence 804(b)(6), which permits admission of prior testimony despite the bar on testimonial hearsay under *Crawford v. Washington*, 541 U.S. 36 (2004), when the defendant procures the unavailability of the witness. The Supreme Court, while not taking a position on the standard necessary to demonstrate that a defendant has procured the unavailability of a witness and forfeited Confrontation Clause rights against that

witness, has stated that "federal courts . . . have generally held the Government to the preponderance-of-the-evidence standard." *Davis v. Washington*, 547 U.S. 813, 833 (2006). Courts within this circuit have applied the preponderance standard as well. *See Doan v. Voorhies*, 2007 U.S. Dist. LEXIS 24388, at *54 (S.D. Ohio Mar. 21, 2007); *United States v. Mayhew*, 380 F. Supp. 2d 961, 969 (S.D. Ohio 2005).

The Government offered the testimony of witnesses who stated that Defendant intimidated and threatened Ruffin in order to prevent her from testifying. (J.A. 1275). Agent Delong testified that when he arrested Defendant while Defendant was visiting his probation officer, he noticed that Ms. Ruffin was also at the probation office. *Id*. When Agent Delong asked her why she was there, Delong testified that Defendant told her in a "very much loud" and "angry and threatening tone, '[L]ook, you don't have to answer any of their questions.'" (J.A. 1276). Another witness to the arrest, Susan Worstall, testified that "Mr. Parks told her not to say anything." (J.A. 1315). When asked to describe Defendant's voice, she respnded, "I think it was strong, a directive, definitely."

Assessing the evidence, the trial judge found that "the government has established clearly" that Defendant's statement was an attempt "to prevent Ms. Ruffin from testifying." (J.A. 1338). As this Court has held, if "the witness is only unavailable to testify because the defendant has killed or intimidated her, then the defendant has forfeited the right to confront that witness." *United States v. Cromer*, 389 F.3d 662, 679 (6th Cir. 2004). The Court need not find that the defendant intended to intimidate the witness in order to prevent her from testifying, only that based on the defendant's actions, the witness was actually prevented from testifying. *United States v. Garcia-Meza*, 403 F.3d 364 (6th Cir. 2005).

Whether the preponderance of the evidence shows that Defendant prevented Ruffin from testifying is questionable. But even if Ruffin's testimony is excluded, other evidence admitted at trial provided the same information as her testimony. Harmless error analysis takes into consideration other "evidence corroborating or contradicting the testimony of the witness on material points." *Van Arsdall*, 475 U.S. at 684. Ms. Ruffin's testimony to the grand jury was used to demonstrate that she received a call from Defendant at 10:57 a.m. on the morning of the robbery, and that she reported her car stolen five minutes later. Because submitted phone records and testimony from a police officer established both of these facts, the jury was informed of Defendant's communication with Ruffin independent of the grand jury testimony. Therefore, any possible *Crawford* violation stemming from the use Ruffin's previous statements was harmless and the Defendant's conviction should not be reversed.

**E. Whether the evidence was sufficient to convict Defendant of aiding and abetting in a bank robbery.**

In determining the sufficiency of evidence for a conviction, this Court assesses "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Samuels*, 308 F.3d 662, 666 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 433 U.S. 307, 319 (1979)).

Defendant argues that other than the calls between him and Ms. Ruffin, there is nothing in the record connecting him to the robbery. The Government, however, presented the following circumstantial evidence that, it argued, established guilt when viewed collectively: (1) Defendant was pulled over while driving the alleged getaway car in 2005; (2) Defendant was photographed with the

alleged getaway car in 2005; (3) eyewitnesses to the robbery identified the car that Defendant was both photographed in and videotaped with as the getaway car; (4) cellular phone records indicate that Defendant immediately contacted Lige at the time of the robbery and escape; (5) cellular phone records indicate that Defendant was in contact with Ms. Ruffin, owner of the getaway car, at the time of the robbery and escape; (6) Ms. Ruffin reported her car stolen five minutes after Defendant spoke with her by cellular phone immediately after the robbery; (7) eyewitness Phillip Barr, who followed Lige out of the bank after the robbery, testified that Lige made a call on his cellular phone at approximately the same time cellular phone records show that Lige called Defendant; and (8) the getaway car was found burned the next day.

Although the evidence in the case is circumstantial and no eyewitness placed Defendant in the getaway car at the time of the robbery, this Court has never held that eyewitness evidence is needed to secure a conviction. Other courts have explicitly rejected such a requirement. *See, e.g.*, *United States v. Brown*, 408 F.3d 1049, 1051 (8th Cir. 2005) ("[E]yewitness identification is not required to support a conviction."); *Calicut v. Quigley*, 2007 U.S. Dist. LEXIS 166, at *10 (E.D. Mich. Jan. 3, 2007). Although circumstantial, evidence that (1) Defendant possessed the car after Ruffin purchased it in 2005; (2) the cell phone records of Ruffin, Lige, and Defendant; (3) and the testimony of other witnesses, was sufficient to allow a reasonable trier of fact to convict Defendant, when viewed most favorably to the prosecution.

**F. Whether the trial court improperly failed to dismiss the indictment after a grand jury witness refused to testify at trial.**

This Court reviews the district court's failure to dismiss an indictment for abuse of discretion. *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir. 1987). The Supreme Court has held that trial courts may use their supervisory authority to dismiss an indictment due to misconduct before the Grand Jury when the misconduct "'substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

Defendant alleges that the grand jury's indictment in this case was based on testimony that Ms. Ruffin later recanted and that therefore the indictment should be dismissed. Although Ms. Ruffin filed an affadavit recanting her testimony before the trial, Federal Rule of Criminal Procedure 12(b)(3) requires that any motion alleging a defect in the prosecution must be made before trial. In this case, however, Defendant failed to file the pre-trial motion to dismiss.

A motion for dismissal of indictment may require examination of whether the misconduct had the potential to affect the trial. *United States v. Thompson*, 287 F.3d 1244, 1253-54 (10th Cir. 2002). Here, at trial, the prosecution provided significant evidence to question the credibility of Defendant's affidavit, including phone records independently corroborating Ruffin's grand jury testimony. The jury returned a guilty verdict based on the body of evidence presented at trial.

The Supreme Court has held that any error before the grand jury is cured by a guilty verdict at trial. As the Court stated:

> We express no opinion as to what remedy may be appropriate for a violation of Rule 6(d) that has affected the grand jury's charging decision and is brought to the attention of the trial court before the commencement of trial. We hold only that however

15

diligent the defendants may have been in seeking to discover the basis for the claimed violation of Rule 6(d), the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings.

*Mechanik*, 475 U.S. at 72-73. Because in this case (1) the prosecution presented evidence undermining Ms. Ruffin's affidavit; (2) Defendant failed to submit his motion pre-trial; (3) other evidence corroborated Ruffin's earlier testimony; and (4) and the jury convicted Defendant, the district court did not improperly deny Defendant's motion to dismiss the indictment.

**G. Whether the Defendant was denied his Fifth Amendment right to notice by a defectively unclear indictment.**

Defendant challenges the sufficiency of his indictment for the first time on appeal. He argues that his Fifth Amendment rights were violated because the indictment did not specify the charge of "aiding or abetting" or "describe the acting element of that charge."

This Court construes indictments liberally when their sufficiency is challenged for the first time on appeal:

> This court generally reviews challenges to the sufficiency of an indictment *de novo*. *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). However, where a defendant does not challenge an indictment until appeal, "the indictment must be construed liberally in favor of sufficiency." *Id*.; *United States v. Harris*, 523 F.2d 172 (6th Cir. 1975). "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime." *Gatewood*, 173 F.3d at 986.

*United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002).

Under Rule 7 of the Federal Rules of Criminal Procedure, the indictment need only provide a plain, concise and definite statement of the essential facts constituting the charge. Here, the indictment alleges that Defendant violated 18 U.S.C. §§ 2113(a) & 2.[2]

Section 2113(a), part of which was excerpted in the indictment, states in relevant part:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association
>
> ...
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

The indictment also stated that Defendant violated Section 2, which states:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

(J.A. 19) (citing 18 U.S.C. § 2).

Although the aiding and abetting language was not written into the indictment, the Section was certainly cited under the count one charge. If the charge was vague, as the defendant claims, he was authorized by Rule 7(f) of the Federal Rules of Criminal Procedure to move for a Bill of

---

[2] Defendant argues that "& 2" is vague. "& 2" refers to 18 U.S.C. § 2, the aiding and abetting provision of the U.S. Code. Although the Government did not quote Section 2 in the indictment, its response to Defendant's severance motion more specifically alleged that Defendant was "charged as being the getaway driver in Count 1." (J.A. 34)

Particulars. Under Rule 12(e), any defects in the indictment must be raised before trial or they are waived. Defendant made no such claim at any time during trial.

Because Defendant failed to raise such an objection during trial, "the 'indictment must be construed liberally in favor of sufficiency.'" *Davis*, 306 F.3d at 411 (quoting *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999)). The indictment detailed the burglary allegation and charged a violation of the aiding and abetting statute in the U.S. Code. The Government's response to Defendant's severance motion more specifically alleged that Defendant was "charged as being the getaway [sic] driver in Count 1." (J.A. 34). The record shows that this allegation was clear to Defendant throughout the case. Defendant's Fifth Amendment claim is therefore without merit.

### III. CONCLUSION

Accordingly and for the reasons stated above, we AFFIRM Defendant's conviction and sentence.