RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0159p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

      No. 03-2485

SEVERO GARCIA-MEZA,

        *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 02-00056—Richard A. Enslen, District Judge.

Argued: January 28, 2005

Decided and Filed: April 5, 2005

Before: BOGGS, Chief Judge; KENNEDY and MARTIN, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Christopher P. Yates, WILLEY, CHAMBERLAIN & YATES, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Christopher P. Yates, WILLEY, CHAMBERLAIN & YATES, Grand Rapids, Michigan, for Appellant. Lloyd K. Meyer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

───────────────

**OPINION**

───────────────

KENNEDY, Circuit Judge. Defendant Severo Garcia-Meza was convicted of first degree murder in violation of 18 U.S.C. § 1111(a) for the stabbing death of his wife, Kathleen Floyd Garcia, who was a member of the Grand Traverse Band of Ottawa and Chippewa Indians. The murder occurred within the jurisdiction of the Grand Traverse Band of Ottawa and Chippewa Indians near Traverse City, Michigan.

The Defendant appeals his conviction on the following grounds. First, he raises a number of complaints concerning the introduction of Rule 404(b) "other-acts" evidence. Specifically, the Defendant contends, the district court abused its discretion when it permitted the government to introduce evidence that the Defendant assaulted his wife 5 months prior to the murder because it was not offered for a proper purpose. Even if this evidence were offered for a proper purpose, the Defendant continues, it should still not have been admitted since its prejudicial effect substantially outweighed its probative value. He also asserts that his Sixth Amendment right "to be confronted

1

with the witnesses against him" was violated when the government introduced hearsay evidence of the assault by having the officers who investigated the assault testify to what Kathleen told them, namely, that the Defendant had beaten her up because he was angry that she had been talking to a former boyfriend. Next, the Defendant asserts, the district court erred in defining premeditation for first degree murder in the jury instructions by conflating the elements of premeditation and malice aforethought. Finally, the Defendant contends, the government's counsel committed misconduct in closing rebuttal argument because his use of examples to distinguish first from second degree murder led the jury to an incorrect concept of premeditation. For the following reasons, we AFFIRM the Defendant's conviction.

## BACKGROUND

Defendant Garcia-Meza, a Mexican citizen who worked in an orchard as a fruit picker, married Kathleen Floyd, who was a member of the Grand Traverse Band of Ottawa and Chippewa Indians (the GTB). Although they initially lived together on the GTB reservation, by the time of the murder, Kathleen no longer lived in the same house with the Defendant, but rather stayed next door in the home of her mother, Linda Holt. Nonetheless, Kathleen remained married to the Defendant and associated with him.

Around 1:00 a.m. on February 22, 2002, the Defendant, Kathleen, and two of Kathleen's female family members, Chelsie and Rosie Johnson, went to Gaspar Nunez's home, who was a friend of the Defendant's. That evening, the Defendant awakened Mr. Nunez and Antonio Rodriguez, a Mexican migrant laborer living with Mr. Nunez, and brought beer into Nunez's home. The group drank beer, listened to music, and danced for about two-and-a-half hours before Kathleen and the Defendant began to fight after Kathleen had danced with Antonio Rodriguez. The Defendant became angry with Kathleen, grabbed her by the hair, called her a bitch, and wrestled her to the floor. Although the Defendant punched his wife first, Kathleen managed to flip him over onto his back and bloodied his lip. Mr. Nunez then asked everyone to leave. Kathleen, with Chelsie and Rosie, left the Defendant and drove back to Linda Holt's house. A few minutes later, the Defendant left Nunez's home and walked back to the reservation alone.

When Kathleen and her family members arrived back at Linda Holt's house, Kathleen and her sister went to Linda's bedroom. There she found her mother and her other sister, Calleen. While in the bedroom, the four of them engaged in conversation. Meanwhile, after walking back from Nunez's home, the Defendant burst through the front door of Linda's house with enough force that the door slammed against the living room wall, waking Calleen's boyfriend, Josh King, who had been sleeping in the living room. King testified that the Defendant went straight to Linda Holt's bedroom where the women were talking. When the Defendant appeared near Linda Holt's bedroom door, he tried to lure Kathleen out of the house. But when she refused, the Defendant grabbed one of her arms with one hand and reached back with his other hand holding a kitchen steak-knife and plunged it into Kathleen's chest. The Defendant was apprehended at the scene.

Five months prior to the murder, the Defendant had assaulted his wife. On the morning of September 9, 2001, the Defendant complained to police that Kathleen had intentionally damaged their van. When officers responded to the complaint, they found Kathleen about to slash the tires of the van, which had had all its windows smashed out. Upon approaching Kathleen, the officers noticed that she had a bruised cheek and jaw. Kathleen told the officers that the Defendant had hit her. Later in the same day, tribal police officers received a call about an assault at a residence in the Grand Traverse Band trust properties. When the officers arrived, they found Kathleen very upset, in pain, frantic, and scared. The officers testified that she had a tennis ball size welt on her jaw, numerous cuts and bruises on her face and leg, blood on her clothes, and complained of pain in her face, back and ribs. Kathleen told the officers that the Defendant cornered her in a bathroom,

repeatedly punched her and threatened to kill her. She told the officers that the Defendant had beaten her because she had talked to a former boyfriend earlier in the day.

During the trial, the district court permitted the government to introduce evidence of this assault to show proof of motive, intent, and capacity to commit murder. After every time evidence relating to this assault was admitted, the district court gave a cautionary instruction to the jury, such as the following:

> "[T]he testimony you heard about the event that occurred in September was not offered to prove that the defendant was guilty of any crime in September, nor was it offered to prove that he has a character such as he commits assaults. Instead, it was offered under Rule 404(b), which says: Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with his character. It may, however, be admissible, and this is why I let it in, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. That's why it came in and for that limited purpose alone."

During the trial, the Defendant argued not that he was not responsible for Kathleen's death (indeed, he admitted he was responsible), but rather that he was not guilty of *first* degree murder since he was too intoxicated on the night of the murder to have formed the premeditation necessary to find him guilty of murder in the first degree. The jury, nonetheless, found the Defendant guilty of first degree murder. This appeal followed.

## ANALYSIS

**I.**      Rule 404(b) Evidence

**A**.      Whether evidence of the prior assault was offered for a proper purpose

The Defendant argues that the district court abused its discretion when it permitted the government to introduce evidence that the Defendant assaulted his wife five months prior to when he murdered her because it was not offered for any proper purpose. We review a district court's determination as to whether evidence of "other acts" is presented for a proper purpose for abuse of discretion. *United States v. Stevens*, 303 F.3d 711, 716 (6th Cir. 2002).

Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to be introduced to prove the character of a person in order to show conformity therewith. That is, the government could not introduce evidence that the Defendant assaulted his wife 5 months prior to the murder to prove that he has a bad character and was therefore more likely to have committed the murder in first degree. However, evidence of prior crimes or wrongs may be introduced for proper purposes, and the district court found that the evidence of the prior assault was properly offered to show proof of motive, intent, and capacity to commit murder. Since we conclude that the evidence was properly admitted to prove motive, which alone is sufficient to permit the introduction of the evidence, we need not consider whether it was also properly admitted to prove intent and capacity to commit murder. The assault went to prove motive since the government offered evidence to show that the assault, like the murder, was a product of the Defendant's jealousy. The officers who investigated the assault testified that Kathleen told them that he had beaten her up because she had talked with a former boyfriend earlier that day. The government also offered proof showing that the fight between the Defendant and Kathleen at Gaspar Nunez's home on the night of the murder occurred because the Defendant was angry with Kathleen for dancing with another man. The Defendant argues that the evidence of the assault could not have been used to prove motive since the reason he assaulted his wife was that she damaged the van he drove, and not because he was jealous. Although it is certainly possible that the Defendant's motive for the earlier assault was based, at least in part, upon

the fact that she had damaged their van, this does not establish that he was not *also* motivated to assault her by the fact that she had spoken with a former boyfriend earlier that day. Nor does the Defendant's description explain why Kathleen appeared injured while she was in the process of damaging the van. We cannot conclude that the district court abused its discretion in finding that the evidence of the assault could be admitted to show motive.

**B.**     Whether the prejudicial effect of the Rule 404(b) evidence substantially outweighed its probative value

The Defendant next argues that, even if the evidence of the prior assault were offered for a proper purpose, the evidence should still have been excluded because its prejudicial effect substantially outweighed its probative value. Rule 403 authorizes exclusion of otherwise admissible Rule 404(b) evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The district court found that although the evidence of the assault may cause some prejudice, "the prejudice is greatly outweighed by its relevance." The Defendant argues, citing *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999), that the district court abused its discretion in reaching this conclusion since evidence of "spousal abuse" is particularly likely to incite a jury to an irrational decision," especially where "[t]he domestic violence evidence . . . [is] graphic and arresting." *Hands*, 184 F.3d at 1328-29 (internal quotations omitted). Although the *Hands* court found that the prejudicial effect of the domestic violence evidence offered against the defendant in a drug possession case "heavily outweighed its probative value," it reached this conclusion because the evidence of the spousal abuse had minimal probative value, if any. *Id*. at 1328. Therefore, on balance, the prejudicial effect of the spousal abuse evidence outweighed its probative value. Moreover, the court noted, the district court did not minimize this prejudicial effect by giving the jury a cautionary instruction concerning the purposes for which the "other-acts" evidence could be used. *Id*. at 1329.

In contrast, the evidence of the assault admitted against the Defendant here did have probative value, as it was offered to show, at the very least, motive. Although all prior wrongful acts admitted against a defendant may have some prejudicial effect, we cannot conclude that district court abused its discretion in concluding that the prejudicial effect of admitting the evidence of the assault was substantially outweighed by its probative value where the evidence was admitted for a proper purpose and the district court gave a cautionary instruction to the jury.[1]

**C.**     Whether the hearsay evidence offered to prove the prior assault violated the Defendant's Sixth Amendment right to be confronted with the witnesses against him

The Defendant next argues that his Sixth Amendment right to confrontation was violated when the government introduced hearsay evidence of the assault by having the investigating officers testify to what his wife told them had happened, namely, that the Defendant had beaten her up because he was angry that she had been talking to a former boyfriend. He argues that the admission of these statements, even though they were excited utterances made minutes after the assault, violated his right to confrontation because, he asserts, the statements were testimonial, as they were

---

[1]The Defendant agues that the district court gave an improper cautionary instruction when, after it informed the jury that the assault evidence was "not admissible to prove the character of [the defendant] in order to show that he acted in conformity with his character," it then listed all the proper purposes for which the evidence could be admissible under Rule 404(b). The Defendant complains that this "laundry list" limiting instruction did not adequately advise the jury of the limited purposes for which the evidence was admitted. Since the Defendant did not object to this instruction at trial, we review for plain error. Although the evidence was not admissible for all the proper purposes listed in Rule 404(b), it was certainly admissible to show motive. "Where a single, legitimate purpose supports the admission of the evidence under Rule 404(b), a trial court's admission of that evidence for additional reasons allowed under the rule does not constitute plain error." *Stevens*, 303 F.3d at 716. We conclude that the district court did not commit plain error in listing all the proper purposes for which the "other-acts" evidence could be admitted in the cautionary instruction.

given to a police officer in the course of the officer's investigation, and because the Defendant did not have a prior opportunity to cross-examine the declarant.**2**

The Supreme Court recently held in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 1365 (2004), that it is a violation of the Confrontation Clause to admit "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* (overruling *Ohio v. Roberts*, 488 U.S. 56, 66 (1980), which had held that statements from an unavailable witness may be admitted at trial without violating the Confrontation Clause if the statements bore adequate indicia of reliability). The Defendant argues that Kathleen's statements concerning the assault were testimonial because they were given to police officers while investigating a crime. The government, on the other hand, argues that the statements were not testimonial since they were excited utterances that were not elicited from structured police questioning and bore no resemblance to the formalized examinations conducted in early English law. We need not decide today, however, whether a victim's excited utterance made to an investigating police officer is testimonial, for the Defendant has forfeited his right to confront Kathleen because his wrongdoing is responsible for her unavailability. *See Crawford*, 541 U.S. 36, 124 S. Ct. at 1370 ("[T]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds"); *Reynolds v. United States*, 98 U.S. 145, 158-59 (1879) ("The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. . . . The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong."). *See also United States v. Cromer*, 389 F.3d 662, 679 (6th Cir. 2004) (noting that if "the witness is only unavailable to testify because the defendant has killed or intimidated her, then the defendant has forfeited his right to confront that witness."). As noted above, in this case, defendant admitted that he killed Kathleen, thereby procuring her unavailability to testify. The dispute at trial concerned not whether he was the one to stab her, but whether he acted with premeditation to support a conviction of first degree murder. Under these circumstances, there is no doubt that the Defendant is responsible for Kathleen's unavailability. Accordingly, he has forfeited his right to confront her.

The Defendant, however, argues that for the rule of forfeiture to apply, a defendant must have killed or otherwise prevented the witness from testifying with the specific intent to prevent her from testifying. Since he did not kill her with the specific intent to prevent her from testifying, the Defendant argues, he should not be found to have forfeited his right to confront her. There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his right to confront the witness where, in procuring the witness's unavailability, he intended to prevent the witness from testifying. Though the Federal Rules of Evidence may contain such a requirement, *see* Fed. R. Evid. 804(b)(6), the right secured by the Sixth Amendment does not depend on, in the recent words of the Supreme Court, "the vagaries of the Rules of Evidence." *Crawford*, 124 S. Ct. at 1370. The Supreme Court's recent affirmation of the "essentially equitable grounds" for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on principles of equity, does not permit.

---

**2**The Defendant's brief argued that the introduction of Kathleen's statements regarding the assault not only violated his right to confrontation, but also that her statements were inadmissible hearsay since they did not fall within the excited utterance exception. During oral argument, however, the Defendant's counsel conceded that the statements were excited utterances.

**II.**     Whether the district court erred in defining premeditation for first degree murder

Before closing argument, the district court instructed the jury with respect to first and second degree murder. It informed the jury that in order for the government to sustain its first degree murder charge, it must prove six elements beyond a reasonable doubt:

> First, that the defendant unlawfully killed Kathleen Floyd Garcia. Second, that the Defendant killed Kathleen Floyd Garcia with malice aforethought. Third, that the killing of Kathleen Floyd Garcia was premeditated by the Defendant. Fourth, that Kathleen Floyd Garcia was an Indian, already proven. Fifth, that the Defendant was not an Indian, also proven. Sixth, that the Defendant killed Kathleen Floyd Garcia within Indian Country.

The district court then went on to define malice aforethought and premeditation to the jury:

> To kill with malice aforethought means with respect to first degree murder, to kill a person deliberately and intentionally. To find malice aforethought, you need [not] be convinced that the defendant hated the person killed, or felt ill will toward the victim at that time.

> In determining whether the killing was with malice aforethought, you may consider the use of a weapon or instrument and you may consider the manner in which the death was caused.

> A killing is premeditated when it is the result of planning and deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent. You should consider all the facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the mind of the Defendant, before and at the time of the killing. No fact, not matter how small, no circumstance, no matter how trivial, which bears on the question of malice aforethought and premeditation, should escape your very careful consideration.

After finishing defining first degree murder, the district court then instructed the jury as to second degree murder. The district court laid out the five elements that the government needed to prove to sustain a second degree murder conviction, which consists of all the elements of first degree murder except premeditation. The court then went on to define malice aforethought with respect to second degree murder:

> To kill with malice aforethought means, with respect to second degree murder either killing another person deliberately and intentionally or to act with a callous and wanton disregard for human life. A callous and wanton disregard means recklessness, evidencing an extreme disregard for human life. To find malice aforethought, you need not be convinced that the defendant hated the person or felt ill will toward the victim at the time.

The Defendant argues that since the district court instructed the jury to consider every fact and circumstance "which bears upon *the question of malice aforethought and premeditation,*" it conflated those two separate elements, thereby leading the jurors to conclude that proof of malice-aforethought constituted proof of premeditation as well. Because first degree murder requires proof of premeditation beyond malice aforethought, the Defendant continues, the district court erred in providing the jurors with an instruction that presented premeditation and malice aforethought as interchangeable concepts.

We will reverse a judgment on the basis of an erroneous jury instruction only when the instruction, viewed as a whole, was confusing, misleading, or prejudicial. *United States v. Sheffrey*, 57 F.3d 1419, 1430 (6th Cir. 1995). The Defendant's sole complaint is that the court instructed the jury to consider all the facts and circumstances that bore upon the *question* of malice aforethought and premeditation, rather than upon the *questions* of malice aforethought and premeditation (or, upon the question of malice aforethought and the question of premeditation). However, in view of the fact that the district court distinguished the distinct, separate elements of malice aforethought and premeditation, as used in first degree murder, and did not list premeditation as an element of second degree murder, we conclude that no reasonable juror would have been confused as to whether premeditation and malice aforethought were separate and distinct elements to be proven.

**III.** Whether the government's counsel's rebuttal closing argument led the jury to an incorrect concept of premeditation

During the Defendant's closing argument, his counsel argued that the government could not prove how the knife that he used to kill his wife got into his hands. He asserted that the knife came from within Linda Holt's residence and that the killing was done, therefore, in the heat of the moment with no opportunity for any planning. In his rebuttal closing argument, the Assistant U.S. Attorney responded as follows:

> Let's just say there was a knife sitting on Linda Holt's bed stand, and let's say the testimony had been that the defendant . . . calmly said: "Come with me, let's go outside, I want to talk to you outside. I'm going to Mexico." She said: "No, I don't want to out there with you." And then the defendant picked up the knife and . . . plunged it into her right there. That's premeditation. There is no . . . magic number as to how long you have to form that premeditation, how long you have to plan it, just that intent to pick up that knife and plunge it into someone's heart, that's first degree murder.

At this point, the defendant objected on the grounds that the Assistant U.S. Attorney mischaracterized the elements of the offense. The district court then instructed the jury that the "elements of the offense will be what I say." The Assistant U.S. Attorney then went on to distinguish second degree murder from first degree. He noted that second-degree consists of a callous and wanton disregard for human life. He then went on to give the following example:

> [I]f two men are in a bar drinking, [a] fight breaks out, . . . one of them picks up a chair and smashes it over the head of another killing him, that's sort of that recklessness [or] wanton disregard. . . . But that set of facts is different than taking a knife. . . . Plunging a knife . . . into someone's heart [is] not recklessness. That's an intent to murder. That's a premeditated intent to kill that person.

The Defendant argues that these comments by the Assistant U.S. Attorney dispensed with the concept of prior design, thereby leading the jury to believe that the intent to kill is sufficient, in and of itself, to establish premeditation. Thus, the Defendant maintains, these comments improperly expanded the scope of premeditation to include all intentional killings. The Defendant argues that reversal is warranted because his defense was based on lack of premeditation, and thus a proper understanding of the distinction between first and second degree murder was essential for the jurors' deliberation.

We employ a two-part test in reviewing claims of prosecutorial misconduct based upon improper statements. *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003). First, we determine whether the remarks were improper. *Id.* Second, if we find any statements to have been improper, we determine whether they were so flagrant as to warrant reversal. *Id.* In considering

whether statements are so flagrant to warrant reversal, we apply the following factors: 1) whether the statements tended to mislead the jury and prejudice the defendant; 2) whether the statements were isolated or pervasive; 3) whether the statements were deliberately placed before the jury; and 4) whether the evidence against the defendant was strong. *Id.*

The Assistant U.S. Attorney's statements were not improper. Rather, he simply made the point that premeditation does not require extensive planning; the Defendant could have formed the intent to murder at any time. In any event, even if they were improper, they were clearly not flagrant. Not only was the evidence against the Defendant strong and the alleged improper statements isolated, but also the district court cured any arguable impropriety by variously admonishing the jurors that what the lawyers said was not the law and that they should only listen to the court's instructions regarding the distinction between first and second degree murder.

**IV.**          For the foregoing reasons, we AFFIRM the Defendant's conviction.