# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL JEFFREY VANBUREN,

       Defendant-Appellant.

UNPUBLISHED
December 20, 2018

No. 337395
Manistee Circuit Court
LC No. 16-004620-FH

---

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of operating a vehicle while intoxicated causing serious impairment of a bodily function, MCL 257.625(5); MCL 257.58c. He was sentenced to one year in jail and five years' probation. Defendant appeals as of right and we affirm.

On April 9, 2016, defendant was involved in a motor vehicle accident in which he crossed the center line of the highway and struck a vehicle driven by Brian Conner. It was determined that defendant's blood contained .350 grams of alcohol per 100 milliliters of blood. Wendy Conner, a passenger in the vehicle driven by Brian, was injured. She was initially diagnosed as having a hairline fracture in her wrist at West Shore Medical Center in Manistee. Two days after the accident she went to Butterworth Hospital in Grand Rapids and was diagnosed as having a broken sternum, broken ribs, a broken collarbone, and fluid in her lung.

Defendant first argues that the trial court erred in admitting medical records from Butterworth Hospital, specifically a CT scan summary, because it was not authenticated and because it was hearsay. This Court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. *People v Briseno*, 211 Mich App 11, 14; 535 NW2d 559 (1995). The Court also reviews whether evidence has been properly authenticated for an abuse of discretion. *People v Ford*, 262 Mich App 443, 460; 687 NW2d 119 (2004). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

During the trial, defendant proffered Wendy's medical record of her April 9, 2016 treatment at West Shore Medical Center where, after a CAT scan, she was diagnosed as having a broken wrist. Calling Wendy as a rebuttal witness, the prosecutor proffered Wendy's records of

-1-

her treatment at Butterworth Hospital on April 11, 2016, where she was diagnosed with the broken sternum, broken ribs, the broken collarbone, and fluid in her lung.

Defendant argues that the medical records from Spectrum were not authenticated. MRE 901 requires that an item be authenticated before it is admitted into evidence. MRE 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The party offering the evidence must "make a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be," and the jury is to determine the value of the evidence, particularly when there is a "dispute regarding the genuineness of evidence." *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 155-156; 908 NW2d 319 (2017). Here, Wendy stated that she was treated at Butterworth Hospital on April 11, 2016, that she had a CT scan, and that she was in possession of the CT summary. Wendy testified that the record indicated that it came from the Butterworth campus of Spectrum Health and that she received it after requesting her medical records from her doctor's office. Wendy stated that she received the packet of her Butterworth records, which contained the CT results, and sent them to the prosecutor.

The trial court can consider any evidence to determine whether evidence offered for admission is admissible. *People v McDade*, 301 Mich App 343, 352-353; 836 NW2d 266 (2013), citing *People v Barrett,* 480 Mich 125, 134; 747 NW2d 797 (2008). It is not required that the proposed evidence be free of weakness or doubt because it must only meet the minimum requirements for admissibility. *McDade*, 301 Mich App at 352-353, citing *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). Here, Wendy's testimony that she requested and received her medical record, and that the records she obtained were labeled as her records, which she provided to the prosecutor, was sufficient for a reasonable juror to conclude that the records were Wendy's medical records.

Regarding defendant's hearsay challenge to the evidence, the trial court found that the records were admissible under the residual hearsay exception provision, MRE 803(24). The court discussed, but did not state a conclusion, regarding admission as a statement made for purposes of medical treatment, MRE 803(4). " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Hearsay is generally not admissible unless it meets the requirements of one of the hearsay exceptions set forth in the Michigan Rules of Evidence. MRE 802; *Stamper*, 480 Mich at 3.

According to MRE 803(24), a statement not admissible under any of the enumerated hearsay exceptions, "but having equivalent circumstantial guarantees of trustworthiness," may be admitted where the trial court determines that "(A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence." *People v Yost*, 278 Mich App 341, 391; 749 NW2d 753 (2008). The CT report had equivalent circumstantial guarantees of trustworthiness as statements admitted as hearsay exceptions, the most closely analogous being the exception for statements made for a medical purpose under MRE 803(4) and statements that are made in the course of a regularly

conducted business activity under MRE 803(6). The CT report originated at the hospital in which Wendy underwent a CT scan, the medical record was obtained by Wendy after she signed a release of information form, and the record bears her name and the date that she said that she sought treatment. The statement was offered as evidence that Wendy had injuries following her accident with defendant, and clearly and directly illustrated her injuries. Conversely, defendant does not offer any explanation as to why the record would lack reliability.

Defendant argues that the purposes of the rules of evidence were not served because the report, as a document, should have been admitted as a business record under MRE 803(6), but was admitted under MRE 803(24) to circumvent the requirement under MRE 803(6) that the custodian of the record present the evidence.[1] Certainly, had the record been offered by the custodian, it would have been admitted as a record kept in the course of a regularly conducted business activity. However, the record was authenticated and the reliability of the record was ensured by Wendy obtaining it from her treatment provider. Admitting the record under MRE 803(24) does not circumvent the reliability requirement embedded in MRE 803(6) that the custodian must present the record; it merely replaced the certainty requirement with an alternative method applicable to the instant circumstances.

Further, in determining whether a statement has "particularized guarantees of trustworthiness," several factors can be evaluated, including:

> (1) the spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . , and (8) the time frame within which the statements were made. [*People v Geno*, 261 Mich App 624, 634; 683 NW2d 687 (2004), quoting *People v Lee*, 243 Mich App 163, 178; 622 NW2d 71 (2000).]

---

[1] MRE 803(6) is an exception to the hearsay rule for "[r]ecords of regularly conducted activity." MRE 803(6) provides, in full:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Here, again, the record in question was obtained by the proponent because she was the only one who could authorize a release of her own medical record from the facility that performed the medical intervention at the time and place where she sought the intervention. Additionally, as a medical report regarding the interpretation of Wendy's CT scan, both Wendy and her physician had every incentive to accurately portray her test results to ensure that she received the proper treatment. Thus, the intent of the hearsay exceptions, to admit evidence that has indices of reliability, is satisfied.

Further, an evidentiary error does not merit reversal in a criminal case unless, after review of the case, it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Where a hearsay statement is not substantive proof of guilt, but rather merely corroborates testimony, it is more likely that the error was harmless. *People v Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010). Here, any error was harmless because both Wendy and her treating physician testified about the results of her CT scan, and her physician explained why the Butterworth record differed from the West Shore Hospital record.

Next, defendant argues that the records should not have been admitted because they violated defendant's right to confront the author of the records. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. The Michigan Constitution also guarantees the accused the right "to be confronted with the witnesses against him . . . ." Const 1963, art 1, § 20. The central protection offered by the Confrontation Clause of the Sixth Amendment is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *People v Levine*, 231 Mich App 213, 219-220; 585 NW2d 770 (1998), vacated on other grounds 461 Mich 172; 600 NW2d 622 (1999). In *Crawford v Washington,* 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that the Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant. See *People v Jordan*, 275 Mich App 659, 662; 739 NW2d 706 (2007). The Confrontation Clause protections are not dependent on "the vagaries of the rules of evidence." *Crawford,* 541 US at 61; *United States v Garcia-Meza,* 403 F3d 364, 370 (CA 6, 2005), and a party's right to cross-examine an adverse witness is a basic due process right. *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 426; 576 NW2d 667 (1998).

The *Crawford* Court did not provide an exhaustive class of statements that would be deemed to constitute testimonial hearsay. However, it did include pretrial statements if the declarant could reasonably expect that the statement would be used "in a prosecutorial manner," see *People v Lonsby,* 268 Mich App 375, 377; 707 NW2d 610 (2005), and if the statement was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v Jambor*, 273 Mich App 477, 486-487; 729 NW2d 569 (2007).

Here, Wendy's CT report was not testimonial hearsay because it was not prepared under circumstances that a reasonable person would believe was for use at a later trial. Wendy went to Butterworth hospital for medical treatment on April 11, 2016. She went because she could not

sleep, had difficulty breathing, was in pain, and was immobilized. The circumstances that resulted in the CT report were Wendy's acute need for medical treatment, and the prosecutor's decision to charge defendant appears to have had no role in Wendy's motivation to have a CT scan. Defendant does not argue that the CT report was testimonial hearsay, and there was no evidence that Wendy anticipated a criminal trial against defendant during her CT scan.

*Crawford* held that state hearsay rules could govern the admissibility of nontestimonial hearsay without offending the Confrontation Clause. *Id.* at 68. The clause only restricts the admissibility of testimonial statements because "[o]nly statements of this sort cause the declarant to be a witness within the meaning of the Confrontation Clause." *Davis v Washington*, 547 US 813, 821; 126 S Ct 2266; 165 L Ed 2d 224 (2006). While nontestimonial statements are subject to traditional rules limiting the admissibility of hearsay, they do not implicate the Confrontation Clause. *Id.*; *People v Taylor*, 482 Mich 368, 377-378; 759 NW2d 361 (2008). Therefore, the Sixth Amendment would not bar the admission of Wendy's CT report because this statement was "nontestimonial." *Jordan*, 275 Mich App at 662.

Next, defendant argues that the statute that he was convicted of violating, MCL 257.58c, is unconstitutionally vague as applied to the facts of this case. Defendant did not raise this issue below. Unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the "'error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence.'" *Id.*, quoting <u>United States v Olano, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).</u>

"The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law." US Const, Am XIV; Const 1963, art 1, § 17; *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). A statute may be overly vague where "it does not provide fair notice of the conduct proscribed," or is "so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." *Id.*, quoting *People v Heim*, 206 Mich App 439, 441; 522 NW2d 675 (1994). "A statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required." *People v Noble*, 238 Mich App 647, 652; 608 NW2d 123 (1999) (citation omitted).

Defendant argues that the statute's definition of serious bodily impairment is unconstitutionally vague.[2] MCL 257.58c states that " '[s]erious impairment of a body function' includes, but is not limited to, 1 or more of the following:"

---

[2] Defendant was convicted under MCL 257.625(1) and (5), which provide, in part: "(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated," and "(5) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3),

(a) Loss of a limb or loss of use of a limb.

(b) Loss of a foot, hand, finger, or thumb or loss of use of a foot, hand, finger, or thumb.

(c) Loss of an eye or ear or loss of use of an eye or ear.

(d) Loss or substantial impairment of a bodily function.

(e) Serious visible disfigurement.

(f) A comatose state that lasts for more than 3 days.

(g) Measurable brain or mental impairment.

(h) A skull fracture or other serious bone fracture.

(i) Subdural hemorrhage or subdural hematoma.

(j) Loss of an organ.

The consideration of the constitutionality of a statute that does not implicate First Amendment[3] guarantees includes examination "of the particular facts at hand without concern for the hypothetical rights of others" to determine "whether the statute is vague as applied to the conduct allegedly proscribed in this case." *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998) (citations omitted).

Here, Wendy was diagnosed as having a fractured clavicle, a fractured left forearm, two fractured ribs with two other possible fractured ribs, a possible fractured sternum, and fluid in her lungs. Her physician said that the injuries were "very serious" because of the soft tissue injuries related to the broken bones, and because Wendy could have lost full use of her arm without treatment. Further, the physician explained that Wendy experienced "a lot of pain" because the clavicle would become displaced if she moved her arm and shoulder, which were immobilized with a sling. The physician concluded that Wendy's injuries were consistent with the type of injury from her auto accident. Wendy reported that she could not shower or feed or dress herself, and could not get out of a bed or a chair without her husband's assistance. Her husband recalled that she was in the hospital for three days beginning on April 11, 2016. Moreover, Wendy required assistance to function for two months because she had difficulty using her upper body due to pain.

Defendant argues that Wendy's injuries were not included among those listed in MCL 257.58c, and, as a result, he did not have notice that her injuries were proscribed under the statute. However, the statute includes serious bone fractures as a specified serious bodily injury, and the evidence indicated that Wendy had several serious bone fractures, including her ribs, clavicle, and possibly her sternum. "[A]n injury need not be long-lasting to be considered a

---

or (8) and by the operation of that motor vehicle causes a serious impairment of a body function of another person is guilty of a crime."

[3] US Const, Am I.

'serious impairment'." *People v Thomas*, 263 Mich App 70, 76; 687 NW2d 598 (2004). Additionally, the statute explicitly states that the list of injuries is not exhaustive, and this Court has held that injuries similar to those on the list also constitute serious bodily injuries. *Id*. The evidence indicated that Wendy was immobilized and her ability to function independently was lost as a result of the injuries for at least two months. Thus, the injuries resulted in serious bodily impairment and the statute properly provided notice to defendant that his conduct was proscribed by law.

The statute provides specific guidance in determining what constitutes a serious bodily impairment. The significant portion of the statute is that the prosecutor has to establish that a particular, listed injury occurred, or that one similar to those listed occurred. This language appears straightforward and plain in requiring specific, rather than vague, evidentiary proof of a serious bodily impairment. The evidence in this case was sufficient to demonstrate that Wendy incurred serious bodily impairment as a result of the accident. The trier of fact was not left to arbitrarily determine whether Wendy had serious bodily impairment; the trier of fact had to determine if Wendy's injuries were listed by the statute or similar to those listed in the statute. "Statutes are presumed to be constitutional . . . unless their unconstitutionality is clearly and readily apparent," *Roberts*, 292 Mich App at 497 (citation omitted), and defendant has not demonstrated that MCL 257.58c was unconstitutionally vague.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause