NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0463n.06

Case No. 22-5178

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JEREMIAH ALLSOPP, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Nov 17, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MATTHEW HARE; COFFEE COUNTY, | ) | THE EASTERN DISTRICT OF |
| TENNESSEE, | ) | TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Pretrial detainee Jeremiah Allsopp brought an excessive-force claim against Officer Matthew Hare. A jury found for Hare. Allsopp appeals, challenging the jury's verdict and an evidentiary ruling by the district court. We affirm.

I.

Even before the incident at issue here, Allsopp was on the Coffee County Jail guards' radar. The guards previously found scissors hidden in Allsopp's laundry. And just before the incident, through the jail intercom, the guards overheard Allsopp and his cellmate concoct a story that they hoped would get them moved into private cells. So when Allsopp called the guards to diffuse a supposed disagreement he was having with his cellmate, the guards were suspicious. Despite their suspicions, the guards proceeded as if a real fight could break out between the cellmates. The guards used the intercom to order the cellmates to step away from each other. Allsopp became

irate, cursing at the guards and stepping out of his cell to raise his middle finger at the guard tower. Fearing violence, Officer Hare's supervisor directed him to secure Allsopp in his cell or on the ground if necessary.

Officer Hare came down from the guard tower to Allsopp's "pod"—a common room with large steel tables surrounded by cells. Allsopp had removed his shirt, which Officer Hare testified is a typical practice for inmates getting ready to fight. As Officer Hare approached, Allsopp clenched his fists and became even more agitated, pointing his finger in Officer Hare's face, cursing at him, and threatening that he would "have something coming" if he dared touch Allsopp. R. 138, Pg. ID 1807.

Though Officer Hare could've secured Allsopp right there, he feared that he might injure Allsopp or himself on the pod's steel tables. Officer Hare asked Allsopp to return to his cell instead. At first, Allsopp didn't comply. He eventually gave in and started towards his cell. But after a few steps, Allsopp suddenly raised his arm—palm away from Officer Hare—as if to reach for a weapon or to make good on his threats.

Because Officer Hare hadn't searched Allsopp, he assumed that Allsopp was reaching for a weapon or preparing to hit him. So Officer Hare wrestled Allsopp to the ground. Fortunately for the detainee, Allsopp's arm and Officer Hare's body took the brunt of the impact. Indeed, Officer Hare protected Allsopp's head from hitting the ground. But Allsopp felt his neck "pop" during the takedown. R. 137, Pg. ID 1623, 1657. As a result, Allsopp "experienced a lot of pain" and could hardly turn his head or move his shoulder after the incident. R. 137, Pg. ID 1624. Despite this, Allsopp refused medical treatment.

Officer Hare's supervisor observed the entire interaction from the guard tower. The supervisor considered Officer Hare's actions appropriate and even necessary under established

procedure. Allsopp thought otherwise and sued Officer Hare for excessive force. Following trial, a jury concluded that Officer Hare was not liable for Allsopp's injuries. Shortly thereafter, the district court denied Allsopp's renewed motion for judgment as a matter of law. Allsopp appealed.

## II.

Allsopp first argues that he was entitled to judgment as a matter of law. In doing so, he shoulders a heavy burden. Allsopp must demonstrate that, viewing all evidence in the light most favorable to Officer Hare, the jury could come to just one conclusion: Officer Hare used unreasonable force. *Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).

Ample evidence supported the jury's verdict. Allsopp's past concealment of a weapon, his threatening behavior, and his sudden move as if for a weapon all provided reasonable grounds for Officer Hare's use of force. Moreover, Officer Hare followed the prison's policies and his supervisor's directions and took extra measures to avoid harming Allsopp. He performed the takedown away from the pod's tables, prevented Allsopp's head from hitting the floor, and absorbed the brunt of the fall by placing himself between Allsopp and the ground. Likely owing to these preventative measures, Allsopp concedes that he was not seriously injured. For these reasons, there was ample evidence for the jury to conclude that Officer Hare's use of force was reasonable.

Allsopp offers two counterarguments.

First, Allsopp argues Officer Hare's use of force was disproportionate because Allsopp was merely disrespectful, not threatening. But that argument directly contradicts Officer Hare's testimony. At trial, Officer Hare testified that he used force because Allsopp's threatening behavior left him with no other option. When there is conflicting testimony, we must accept the

testimony that is most favorable to the winner at trial. *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 879 (6th Cir. 2001). Here, that means crediting Officer Hare's testimony. And that testimony supports the jury's verdict.

Second, Allsopp argues that Officer Hare waited too long before taking Allsopp to the ground. This too conflicts with Officer Hare's testimony that, for the safety of both men, Officer Hare waited to take Allsopp to the ground until he was clear of the tables. Officer Hare's version of events—which, again, we must credit—supports the jury's finding.

For these reasons, the jury was entitled to find that Officer Hare used force in an objectively reasonable manner.

### III.

Allsopp also asks for a new trial because he contends the district court improperly excluded evidence of Officer Hare's past uses of physical force against other inmates. But the district court's evidentiary ruling was not an abuse of discretion.

Federal Rule of Evidence 404 prohibits evidence of past acts if it is meant to show that a person acted similarly on this occasion. In other words, a plaintiff may not ask the jury to infer that the defendant violated the law on this occasion because he "is the sort of person who" breaks the law. *Bard v. Brown Cnty.*, 970 F.3d 738, 757 n.12 (6th Cir. 2020) (citation omitted). But that's exactly what Allsopp wanted the jury to do. At trial, Allsopp wanted to show "that Hare has a pattern of using physical force when faced with verbal disrespect." Appellant Br. 43. Essentially, Allsopp wanted to present evidence allowing the jury to infer that because Officer Hare allegedly used physical force on other inmates without justification in the past, he likely did the same in this instance. But Rule 404 stands in his way.

Before the district court, Allsopp argued that Officer Hare's past conduct wasn't character evidence but evidence of Officer Hare's motive. To be sure, Rule 404 permits evidence of past wrongs to be admitted to prove motive. Fed. R. Evid. 404(b)(2). But Allsopp's proposed evidence would not have done that. One of Allsopp's cited cases provides a good example of admissible motive evidence and illustrates why Allsopp's evidence instead constituted inadmissible character evidence. *See United States v. Garcia-Meza*, 403 F.3d 364 (6th Cir. 2005). In *Garcia-Meza*, the prosecution introduced evidence that the defendant had assaulted his wife out of jealousy before she was murdered. *Id.* at 368. On one hand, this evidence could have supplied a motive for the murder: jealousy. On the other hand, such evidence might have been used to show that because the defendant had attacked his wife before, he would have been likely to attack her again. But the kind of evidence offered in that case reduced the risk that the jury would use the evidence to determine motive. The prosecution didn't just introduce evidence that the assaults occurred; it showed the jury why the defendant previously assaulted his wife and argued that same motive could also explain the murder. *Id.* That's not what Allsopp wanted to do. Allsopp sought to introduce evidence of Officer Hare's past uses of force against other inmates to show he was more likely to use force on this occasion. That inference is flatly prohibited by Rule 404.

Allsopp also sought to introduce the evidence of past incidents to show his entitlement to punitive damages. But the jury found that Officer Hare was not liable for excessive force, so punitive damages were not on the table. Thus, any error in excluding the evidence relevant to punitive damages was harmless. *See A.K. ex rel Kocher v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 629 (6th Cir. 2020).

Although the district court excluded evidence of Officer Hare's alleged past wrongs, the court admitted some character evidence in another form: Officer Hare's supervisor testified that

Hare was a "fine officer." R. 137, Pg. ID 1705. Allsopp contends that he was entitled to counter that opinion on cross-examination with evidence of Officer Hare's past uses of force. The district court did not allow unbounded cross-examination, but it did permit questioning about past conduct that affected the supervisor's opinion of Officer Hare. *See* Fed. R. Evid. 405(a) (giving the court discretion to "allow an inquiry into relevant specific instances of the person's conduct"). It limited the inquiry to incidents that the supervisor knew about. And the supervisor did not know about the incidents Allsopp wanted to introduce. But the limits the district court imposed aren't unreasonable just because those limits kept out evidence Allsopp wanted to introduce. District courts possess significant discretion when it comes to proof of past conduct. *See United States v. Frost*, 914 F.2d 756, 772 (6th Cir. 1990) (discussing *Michelson v. United States*, 335 U.S. 469, 480 (1948)). And the limits the court imposed here were well within that discretion.

*     *     *

We affirm.